(No. 38697.—

Herschel C. Latham *et al.,* Appellants, *vs.* The Board of Education of the City of Chicago *et al.,* Appellees.

*Opinion filed July 3, 1964.—Rehearing denied September 25, 1964.*

Turner, Cousins, Gavin & Watt, of Chicago (Garland W. Watt and Raymond E. Harth, of counsel,) for appellants.

James W. Coffey, of Chicago (Frank S. Righeimer, John T. Mehigan, and Robert E. Harrington, of counsel,) for appellees.

Mr. Justice Underwood delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County sustaining a motion to strike their complaint

for declaratory judgment and for injunction, denying them leave to file an amended and supplemental complaint and dismissing the suit. The presence of constitutional questions warrants this direct appeal.

This is a representative suit filed by plaintiffs as citizens, taxpayers, voters, and residents of the city of Chicago wherein they seek a judgment declaring the statutes providing for the creation and corporate existence of the Board of Education of the City of Chicago to be unconstitutional, and also seek to enjoin the levy, collection and expenditure of any and all taxes for the support of the School District of the City of Chicago.

Plaintiffs' original complaint consists of five counts, the first of which alleges the status of plaintiffs to maintain the action and states, in substance, that the procedures required by article 34 of the School Code (Ill. Rev. Stat. 1963, chap. 122, art. 34,) which applies only to cities having a population over 500,000, result in the Board of Education of the City of Chicago levying taxes for the city's educational system, and that such levy by the Board, whose members are appointed rather than elected, constitutes an unlawful exercise of the power to tax in violation of section 9 of article IX of the constitution of the State of Illinois. The procedures referred to involve a detailed report of estimated financial needs and receipts by the general superintendent to the Board, Board preparation of a budget, hearings thereon prior to submission thereof to the city council, and, it is alleged, determination by the Board of the rate of tax to be extended in order to produce the revenue desired. Plaintiffs contend these acts constitute the actual tax levy and that the subsequent passage of a levy ordinance by the city council is a perfunctory act.

To support their argument that, in fact, the Board rather than the city council levies the taxes needed to support the Chicago school system, plaintiffs points to language found in sections 34—53, 34—54, 34—57 and 34—58 of the

School Code. Of the four provisions the principal one is section 34—53, and the pertinent language therein is as follows: "For the purpose of establishing and supporting free schools * * * the board of education *and the authorities of such district or city* * * * may levy annually * * * a tax * * * provided that the taxes so levied * * * shall not exceed the estimated amounts of taxes to be levied for such year * * * and set forth in the annual school budget of the Board * * *." (Italics ours). It is significant that in this section and in sections 34—54 and 34—57 the statutory language authorizing the levy is always framed in the conjunctive, joining the Board *and* the municipal authorities. Only section 34—58 of the provisions cited by plaintiffs does not contain such conjunctive language but states that: "* * * the board may levy or cause to be levied annually for the purpose of carrying out the provisions thereof a tax * * *." Such language considered alone might be thought to indicate that the Board itself may levy a tax. However, in section 34—55 the legislature expressly negates such an implication by the following language: "This Article does not authorize the board to levy or collect any tax, but the city council shall, upon the demand and under the direction of the board, annually levy all school taxes." Ill. Rev. Stat. 1963, chap. 122, par. 34—55.

The conclusion that the statute provides that only the municipal authority may levy is strengthened by the provisions of many other sections of the article dealing with tax levies for special purposes where the express terms require action by the city council. See, for example, sections 34—22.1 *et seq.* (tax to retire bonds), 34—23 (issuance of tax anticipation warrants), 34—60 (tax for teachers' pension and retirement fund). The fallacy of plaintiffs' argument that the Board makes the levy is clear when we consider that even though all preliminary steps have been taken by the Board and a final budget has been adopted, not a penny of school taxes will be forthcoming without the adop-

tion by the city council of an ordinance levying the tax. Plaintiffs' allegation that the Board sets the rate at which the tax is extended is a mere conclusion not founded on any factual allegations and, in fact, is contrary to the statutory provisions vesting the authority to determine such rate in the county clerk. Ill. Rev. Stat. 1963, chap. 122, par. 34—56 *et seq.* and chap. 120, par. 643.

The substance of count II charges that the provisions of article 34 which provide for the appointment of members to the board of education in cities exceeding 500,000 population, whereas board members are elected elsewhere in the State, is special legislation violative of section 22 of article IV of the constitution of Illinois, and that the classification thus established on the basis of population bears no reasonable relationship to the objectives sought to be accomplished.

When considering the validity of a legislative classification there is always a presumption that the General Assembly acted conscientiously, and this court will not interfere with its judgment except where the classification is clearly unreasonable and palpably arbitrary. *Du Bois* v. *Gibbons,* 2 Ill.2d 392.

The controlling rule is well established that: "Classification on the basis of population is not objectionable where there is a reasonable basis therefor in view of the object and purposes to be accomplished by the legislation and such an act is not local or special merely because it operates in only one place, if that is where the conditions necessary to its operation exist." *Apex Motor Fuel Co.* v. *Barrett,* 20 Ill.2d 395, 404; *People ex rel. County of Du Page* v. *Smith,* 21 Ill.2d 572; *Alexander* v. *City of Chicago,* 14 Ill.2d 261; *Gaca* v. *City of Chicago,* 411 Ill. 146; *Mathews* v. *City of Chicago,* 342 Ill. 120.

In *Mathews* the appellant, in a representative suit as a taxpayer of the city of Chicago, attacked the constitutionality of legislation establishing working cash funds in cities, counties and school districts above certain stated populations,

which actually applied only to the city of Chicago, the Chicago School District and the county of Cook, raising the identical constitutional contentions made by plaintiffs herein. This court said therein at page 128:

"The prohibition contained in section 22 of article 4 of the constitution against the passage of local or special laws in certain enumerated cases does not mean that every law shall affect alike every place and every person in the State but it does mean that it shall operate alike in all places and on all persons in the same condition. When referring to legislation the term 'local' means laws relating to a portion, only, of the territory of the State, and the term 'special,' laws which impose a particular burden or confer a special right, privilege or immunity upon a portion of the people of the State. (*People* v. *Wilcox*, 237 Ill. 421; *People* v. *Day*, 277 id. 543; *People* v. *Diekmann*, 285 id. 97.) Whether laws are general, local or special does not depend upon the number of those within the scope of their operation. They are general not because they operate in every place or upon every person in the State, but because every place or person brought within the relations or circumstances provided for is affected by the law. (*People* v. *Diekmann, supra.*) A law general in its nature and uniform in its operation upon all persons coming within its scope is a general law. The legislature may impose limitations upon the action of individuals or classes of individuals but it may do so only by general laws, and if it imposes restrictions on some and not upon others the difference must be based upon a substantial difference of conditions having a reasonable relation to the object of the legislation which differentiates the one class from the other. (*People* v. *Kewanee Light Co.* 262 Ill. 255.) All reasonable doubts are to be resolved in favor of upholding the validity of the statute. (*People* v. *Gordon*, 274 Ill. 462.) An act is not local merely because it operates in but one place. We have repeatedly held that a law may be general and yet operative in a single place where the condition

necessary to its operation exists. (*People* v. *Kaelber,* 253 Ill. 552; *West Chicago Park Comrs.* v. *McMullen,* 134 id. 170; *Martens* v. *Brady,* 264 id. 178.) Whether the condition exists in one place or many, if the classification is reasonable and just it does not violate the constitution and it applies to all places now within its terms and to all that may hereafter come within its terms." *Mathews* v. *City of Chicago,* 342 Ill. 120, 128-129.

When drafting article 34 the legislature determined that it should apply only to cities having a population exceeding 500,000 and that each such city should constitute one school district. The legislature further provided that in each such district, the Board members should be appointed by the mayor with the approval of the city council. In the briefs of both parties herein may be found statistics suggesting the magnitude of the Chicago school system. The fact that, in 1964, the Chicago Board of Education will spend in excess of $300,000,000, or that in the Chicago School District there are more than 1,700,000 voters are but examples. Moreover, this court takes judicial notice that the problems inherent in the supervision and management of a school system in a metropolitan area of 500,000 or more, and particularly, in the city of Chicago, are far more complex and may well require different modes of operation than a system in an average-size district. The intricacies of a metropolitan school district of this magnitude require an especially high degree of competence in the members of the Board. The legislature has determined that such personnel can best be obtained as Board members in large cities having a population of over 500,000 by the appointive process rather than by a general city election, and has so provided in sections 34—1 to 34—4. Whether or not the General Assembly has chosen the best method to accomplish an objective is a legislative and not a judicial question. *Fiedler* v. *Eckfeldt,* 335 Ill. 11, 31.

Hence, the classification found in article 34 restricting its operation to cities having a population exceeding 500,000, being based upon exigencies found in such metropolitan areas, does not create local or special legislation and is therefore constitutionally valid. The trial court properly dismissed count II.

In count III plaintiffs allege that article 34 denies them equal protection of the laws because it establishes an arbitrary classification and because it deprives them of the right to vote for members of the Board of Education which franchise is given residents of smaller districts. In *People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557, this court said at 564: "The constitutional guaranty of equal protection of the laws is interposed against discriminations that are purely arbitrary. The fourteenth amendment does not purport to prevent a State from adjusting its legislation to differences in situation and to that end to make a justifiable classification. It merely requires that the classification shall be based on a real and substantial difference having a rational relation to the subject of the particular legislation. (*Nebbia* v. *New York,* 291 U.S. 502; *Royster Guano Co.* v. *Virginia,* 253 id. 412; *People* v. *Ladwig,* 365 Ill. 574; *Michigan Millers Ins. Co.* v. *McDonough,* 358 id. 575; *People* v. *City of Chicago,* 337 id. 100.) The classification need not, however, be accurate, scientific, logical or harmonious, so long as it is not arbitrary and will accomplish the legislative design. (*Punke* v. *Village of Elliott,* 364 Ill. 604; *Stewart* v. *Brady,* 300 id. 425.)." Our discussion of count II established the propriety of the legislative classification found in sections 34—1 through 34—4 of article 34. Where a classification is reasonable and the statute is uniform in its operation on all members of the class to which it applies, there is no violation of the constitutional guaranty of equal protection of law. (*Conlon Bros. Mfg. Co.* v. *Annunzio,* 409 Ill. 277, 283.) As was said in *Weksler* v. *Collins,* 317 Ill. 132 at 138:

"A statute which applies to one city, only, does not deny the equal protection of the laws where it is based on some real distinction between the particular city and the other territory of the State."

Plaintiffs' contention that article 34 denies them their inherent right to directly elect members of the Board of Education in their school district is adequately answered in *People* v. *Deatherage,* 401 Ill. 25, where we said at page 35: "The legislature possessing all power to legislate in reference to public school matters, limited only by the stated limitations found in section 1 of article VIII of the constitution, no resident of a school district has an inherent right of franchise insofar as school elections are concerned. His right to vote therein is purely a permissive one bestowed by legislative grace in furtherance of the policy of the legislature."

Count IV alleges article 34 of the School Code is violative of due process in that it is an arbitrary delegation of police power and governmental functions to a board not responsible to the electorate, reposes unregulated discretion in an appointive board, is an unlawful delegation of legislative power and that the power to tax so delegated deprives plaintiffs of their property without due process. The legislature is mandated by the constitution of Illinois to establish a system of free schools for all the children of the State and in furtherance of such legitimate legislative responsibilities the General Assembly may delegate to such agencies as it sees fit the power to do those things which it might properly but cannot understandingly or advantageously do itself. (*Smith* v. *Board of Education,* 405 Ill. 143, 147.) This court has said: "The power of the legislature to create public corporations is practically unlimited. It may create any conceivable kind of a corporation it sees fit for the more efficient administration of public affairs and endow such corporation with such powers and functions as it deems necessary and proper for the administration of such corpo-

rate powers and affairs. (*People ex rel. Wies* v. *Bowman,* 247 Ill. 276)." *People ex rel. Bd. of Trustees of U. of I.* v. *Barrett,* 382 Ill. 321, 345.

Moreover, since the Board's functions and powers are expressly defined in article 34, as are the maximum rates at which taxes may be levied, it is apparent that the powers of the Board are not absolute, unregulated or undefined as argued by plaintiffs. In addition to the above we regard what we have said with reference to Counts I, II and III as dispositive of the argument made with reference to count IV, and no error resulted from its dismissal.

Count V of the complaint alleges that although section 34—3 confers upon the mayor of the city of Chicago responsibility for appointment of members of the Board of Education, subject to the approval of the city council, the mayor's practice of making such appointments from a list of nominees submitted to him by an "Advisory Commission on School Board Nominations" constitutes an "unconstitutional delegation of legislative authority and powers to private individuals". The commission is stated to be composed of the heads of universities, civic, business, labor and professional organizations who serve at the mayor's request, meeting to consider recommendations to be made to the mayor whenever appointments to the Board of Education are required. It is further alleged that the commission has, on occasion, adopted criteria for consideration of nominees in addition to the statutory qualifications for appointment set forth in section 34—4. The amended complaint added the allegation that the mayor had "bound himself" to make appointments only from the list of nominees submitted by the commission. While the method by which the mayor "bound himself" is not specified in the pleadings, it is stated in the briefs that he did so by statements made during his election campaigns.

That serious consideration of count V is unmerited is apparent. No action by the mayor could bind the members

of the city council, whose approval is required by section 34—3. The mayor has not, by seeking the advice and suggestions of the advisory commission, legally restricted his appointees to those individuals thus recommended. If such pre-election statements of intention were made, they would not prevent his subsequent action to the contrary if his judgment so dictates. As the trial court aptly stated in referring to the relationship between the mayor and the commission, "consultation is not abdication".

While plaintiffs contend the trial court erred in denying plaintiffs' motion for leave to file an amended complaint, the judgment order states that the court examined the amended complaint sought to be filed and concluded it was substantially the same as the original. We have likewise examined the amended complaint. Except for adding as defendants the individual members of the Board of Education, the general superintendent and his assistant, the city treasurer and school treasurer, and the secretary of the Board, and including in count I an allegation that the Board has conceded to its general superintendent authority properly exercisable only by the Board and abandoned its control over him, the substance of the amended pleading is identical with the original. The new allegations of count I are mere conclusions of the pleader, and the trial court did not err in refusing leave to file the amended complaint and in dismissing the suit.

The judgment of the circuit court of Cook County is therefore affirmed.

*Judgment affirmed.*