466 F.2d 629
 Goldie Ann BETTS, a minor, by her mother and next friend,
Earline Betts, on behalf of herself and all others
similarly situated, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF the CITY OF CHICAGO, a body politic
and corporate, et al., Defendants-Appellees.
 No. 72-1405.
 United States Court of Appeals,
Seventh Circuit.
 Argued July 19, 1972.
Decided Aug. 25, 1972.
 
 Michael A. Kreloff, Sheldon H. Roodman, Legal Aid, Chicago, Ill., for plaintiff- appellant.
 James W. Coffey, Robert J. Krajcir, Chicago, Ill., for defendant-appellee.
 Before CUMMINGS, PELL and STEVENS, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Plaintiff Goldie Betts, a former Chicago high school student, by her mother and next friend, filed this complaint for declaratory and injunctive relief under Section 1983 of the Civil Rights Act (42 U.S.C. Sec. 1983). Count I alleged that the disciplinary proceeding culminating in Goldie's transfer from Bowen High School to Simeon Continuation School violated the due process clause of the Fourteenth Amendment. Count II alleged that her involuntary transfer to this continuation school was contrary to Illinois law (Ill.Rev.Stat.1971, ch. 122, Secs. 13-1 to 13-9) since she was not regularly employed. Count III alleged that her transfer to the continuation school violated the Illinois compulsory school attendance laws (Ill.Rev.Stat.1971, ch. 122, Sec. 26-1).
 
 
 2
 Plaintiff filed a motion for preliminary injunction seeking her reinstatement immediately "to Bowen High School or some other high school in the Chicago public school system" pending a final disposition of the lawsuit. After hearing testimony and arguments of counsel, the district court entered findings of fact and conclusions of law denying the motion for a preliminary injunction. We affirm.
 
 
 3
 As shown by the verified complaint and by the testimony adduced at the hearing, Goldie Betts was a sixteen- year-old sophomore attending Bowen High School on April 19, 1972. On that date, three false alarms had been sounded, necessitating evacuation of four thousand students and two hundred faculty members for five to seven minutes on each occasion and requiring the presence of three fire department vehicles and their personnel. After the last false alarm, Goldie was interrogated by Paul N. Dravillas, Administrative Assistant to the Principal of the school, in the presence of an officer of the fire department. She was asked about the false alarm that had just occurred but denied being a participant.[1] Dravillas told her that if she told the truth, the "school would handle it." She then admitted that she had twice pulled the fire alarms on that day in the company of two other students, one of whom broke the glass coverings on the alarm boxes. She also supplied a written statement that she, Brenda Smith and Derrick Burton were the three culprits. Thereupon Goldie was taken to the local police station.
 
 
 4
 Goldie's mother testified that Dravillas called her when Goldie was taken to the police station. He told Mrs. Betts that Goldie had pulled the fire alarms, had admitted so doing, and was presently at the police station. He asked Mrs. Betts to be at Bowen High School to discuss the matter at 8:30 the next morning. She then called for Goldie at the police station. Evidently no charges were preferred against the plaintiff, and she was permitted to leave with her mother.
 
 
 5
 The conference on the ensuing morning was attended by Dravillas, the plaintiff, her mother, and the plaintiff's high school counsellor. Dravillas informed Goldie and her mother that it was his considered recommendation that Goldie be transferred from Bowen to Simeon Continuation School, where she could attend classes once a week. Despite Mrs. Betts' protestations, Goldie's transfer was immediately effectuated. Dravillas said that someone saw Goldie pull the alarm on one of the occasions in question. After returning home, Goldie told her mother that Derrick broke the glass, Goldie pulled the alarms and Brenda just stood there and watched. Mrs. Betts later tried unsuccessfully to have her daughter reinstated at Bowen. Goldie now attends Simeon Continuation School once a week, but her attendance there will not give her credit for the time she missed at Bowen during the balance of her sophomore year.
 
 
 6
 Dravillas testified that he explained to Mrs. Betts and her daughter that Goldie would be eligible for summer school and possible might enroll this fall in Chicago Vocational School or some other fulltime high school, if it would accept a transfer from Simeon Continuation School.
 
 
 7
 At the hearing in court, Goldie admitted she had pulled the fire alarms and upon interrogation by defense counsel and by the trial court, she said "I don't have an answer" as to why she did so.
 
 
 8
 In its findings of fact, the district court noted that both plaintiff and her mother had an opportunity to say whatever they wished at the two-hour conference with Mr. Dravillas and Goldie's counsellor on April 20th. He also found that the plaintiff and her mother had been notified about the conference and had knowledge of Goldie's actions in causing the false fire alarms prior to the conference. The court concluded that plaintiff had not shown a clear right to a preliminary injunction, had failed to show sufficiently irreparable harm for the court to disturb the status quo and had failed to show a reasonable probability of ultimate success at the future trial. Therefore the preliminary injunction was denied.
 
 
 9
 In this Court plaintiff argues that she was denied equal protection of the laws in that the procedural safeguards afforded to her were not comparable to those required by the Illinois statutes for students in areas other than Chicago.[2] However, the equal protection clause was not mentioned in any of the counts of the complaint on which the motion for a preliminary injunction was grounded and therefore will not be considered on appeal.[3] On the other hand, upon remand plaintiff may as a matter of course amend her complaint to allege violation of the equal protection clause. Rule 15(a) of the Federal Rules of Civil Procedure. If such an amendment is forthcoming, the district court may well decide that the equal protection clause has been violated by affording lesser procedural safeguards to Chicago students in disciplinary proceedings than in other Illinois school districts, unless the defendants can show the distinction to be rationally related to the achievement of a legitimate state goal.[4]
 
 
 10
 As to procedural due process, it is beyond question that the plaintiff's interest in continuing her high school education is within the purview of the Fourteenth Amendment's due process protection. Cf. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 27.01, 33 L. Ed.2d 548 (1972). As to what process is due, it is important that the plaintiff unequivocally admitted the misconduct with which she was charged. In such a circumstance, the function of procedural protections in insuring a fair and reliable determination of the retrospective factual question whether she in fact activated the false fire alarms is not essential. See Morrissey v. Brewer, 408 U.S. 471, 472-480, 486-490, 92 S.Ct. 2593, 2594-2600, 2603-2605, 33 L.Ed.2d 484 (1972). However, due process may also contemplate affording the plaintiff an opportunity to be heard on the question of what discipline is warranted by the identified offense. See id. 408 U.S. at 471, 480, 92 S.Ct. at 2598-2600, 2603- 2605. Although the meting out of disciplinary punishment is a matter left largely to the discretion of the school authorities, since a penalty which is tantamount to expulsion was involved, and since that penalty was discretionary rather than prescribed, the school authorities were plainly required to give the plaintiff and her parent some opportunity to present a mitigative argument.
 
 
 11
 As we recently held in Linwood v. Board of Education of the City of Peoria, 463 F.2d 763, at 770 (7th Cir., 1972):
 
 
 12
 "The type of administrative hearing here involved need not take the form of a judicial or quasi-judicial trial. Due process in the context here involved is not to be equated, as appellant urges, with that essential to a criminal trial or a juvenile court delinquency proceeding."
 
 
 13
 Keeping in mind the limited function to be served by procedural protections on the facts of this case, in our view plaintiff did not show a reasonable probability of successfully proving she was denied those essential to due process. What appears is that she and her mother received adequate notice of the charges, had sufficient opportunity to prepare for the meeting, were accorded an orderly hearing and were given a fair and impartial decision. No more is required. Whitfield v. Simpson, 312 F. Supp. 889, 894 (E.D.Ill.1970).
 
 
 14
 As the district court found, Goldie and her mother knew of the charges against her and received notice of the April 20th conference. It is clear that they were aware the meeting was arranged to deal with Goldie's conduct in setting off the false fire alarms. Since she was given a full chance to contest the transfer to Simeon on and after April 20th, we cannot say that Mr. Dravillas' April 19th failure specifically to advise Mrs. Betts of the possible transfer denied plaintiff due process.[5] Surely plaintiff and her mother realized from Mr. Dravillas' April 19th phone call, the episode at the police station, and the seriousness of the misconduct that some form of grave discipline would be invoked at the meeting. Under the Chicago Board of Education rules (note 7 infra), Goldie's complete exclusion by the General Superintendent of Schools was a possible penalty, but instead the somewhat less drastic transfer to Simeon was selected as the appropriate discipline.
 
 
 15
 As the district court also found, Bowen's principal directed that Goldie be transferred to Simeon Continuation School upon Mr. Dravillas' recommendation. This was because of the detrimental influence occasioned by her misconduct.[6] The transfer slip was then executed in the principal's name by Mrs. Ruby Clarke, Goldie's counsellor. This complied with Section 6-8 of the Chicago Board of Education Rules.[7] Accordingly, we cannot say that plaintiff has shown any probability that she was denied due process of law.
 
 
 16
 With respect to plaintiff's claims that her transfer to Simeon violated Illinois statutes establishing continuation schools and requiring compulsory school attendance, it appears that the district court did not specifically address these contentions. However, the complaint predicated federal jurisdiction over these state claims on a theory of pendent jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L. Ed.2d 218, makes clear that the exercise of pendent jurisdiction is a matter for the district court's discretion, not one of plaintiff's right. The facts that the district court's findings seem relevant only to the federal question of due process and that the court concluded it had jurisdiction of the action under 28 U.S.C. Sec. 1343(3) without mentioning pendent jurisdiction indicate the court was not exercising pendent jurisdiction over the state claims or at least was reserving decision on that question until the appropriateness of its exercise had been argued by the parties and considered by the court. It may be noted that the complaint and motion for preliminary injunction were filed contemporaneously on May 15, 1972, the hearing on the motion was held May 17 and 18, 1972, and the record reveals no responsive pleading or motion addressing the jurisdictional question as having been filed by the defendants.
 
 
 17
 If the district court had certainly declined to exercise pendent jurisdiction or had reserved decision on the question, it would be inappropriate for us to review the state claims' warrant of preliminary injunctive relief. However, the matter is not free from doubt. Since the plaintiff told the court her motion was "on all of the counts in the complaint" (Tr. 161) and the court undertook to "deny your motion, whatever it is" (Tr. 162), we will assume the court decided the state claims did not justify granting a preliminary injunction, impliedly exercising pendent jurisdiction at least ad hoc.
 
 
 18
 We cannot say plaintiff showed a reasonable probability of ultimate success on either of her claimed Illinois statutory violations. Plaintiff argues that the Sections of the Illinois School Code which provide for the establishment of continuation schools for regularly employed children somehow forbid a school board from transferring to a continuation school any student not so employed. Ill.Rev.Stat.1971, ch. 122, Secs. 13-1 to 13-9. First, it appears, though it is uncertain, that these Sections do not govern the defendant board, whose authority to establish special educational facilities is especially provided for in Ill.Rev.Stat.1971, Sec. 34-18(1). See Ill. Rev.Stat. 1971, ch. 122, Secs. 10-1, 10-10. Second, we find nothing in the cited Sections to forbid a school board from transferring a student to a continuation school as a disciplinary measure in a case where the student's conduct could be visited with suspension or expulsion. Plaintiff also claims her transfer violated the compulsory attendance laws. Ill. Rev.Stat.1971, ch. 122, Secs. 26-1, 26-2. However, since the Chicago Board of Education is authorized to promulgate rules to "expel, suspend or otherwise discipline any pupil found guilty of gross disobedience [or] misconduct,"[8] it is difficult to conceive that the compulsory school attendance laws foreclosed plaintiff's transfer as a disciplinary measure. Rather these laws are directed to parents or guardians and do not purport to guarantee students impunity from discipline removing them from their school regardless of the misconduct they engage in.
 
 
 19
 Since on her present complaint plaintiff has not shown a reasonable probability of ultimate success, it is not really essential to consider whether she will suffer irreparable injury in the absence of a preliminary injunction. In any case, certainly failure to receive credit for her sophomore year may constitute irreparable damage, but even if injunctive relief were justified, it is not shown that such damage could be undone because awarding credit without Goldie's having performed the required schoolwork would be inappropriate relief. At this date it is doubtful that giving her an opportunity to complete the work would allow her to catch up with her class by the start of the fall semester. Insofar as plaintiff claims denial of an injunction reinstating her to Bowen High School will work irreparable harm by ending her educational opportunities for all practical purposes, she has not made a sufficient showing. She did not show she would have been deprived of an opportunity to attend summer school sessions at a regular high school had she timely secured a summer school permission application from Simeon. Nor has she shown that she will be deprived of entry into a Chicago high school this autumn.
 
 
 20
 Finally, plaintiff's admitted misconduct was "truly gross by any standard," so that she cannot complain that the statutory terms "gross disobedience [or] misconduct" (note 2 supra) were unconstitutionally vague in the absence of defining rules issued by the local school authority. Linwood v. Board of Education of the City of Peoria, supra, 463 F.2d 763, at 767.
 
 
 21
 In affirming the denial of a preliminary injunction, we of course do not decide that Goldie Betts is unentitled to appropriate relief after trial. However, plaintiff has not shown that the district court abused its discretion in denying a preliminary injunction. Therefore, its order may not be disturbed.
 
 
 22
 Affirmed.
 
 
 
 [1]
 Plaintiff contends that failure of the administrative assistant and the fire department official to give her Miranda warnings prior to their interrogation violated due process. However, Miranda warnings are not a requisite of due process but a condition to the admissibility in a criminal prosecution of statements obtained from a defendant questioned while in custody or otherwise significantly deprived of his freedom of action. Miranda v. Arizona, 384 U.S. 436, 445, 86 S.Ct. 1602, 16 L.Ed.2d 694. This requirement has its reason for being in the Fifth Amendment's privilege against self-incrimination. Id. at 467, 86 S.Ct. 1602. The evil of police coercion at which the Miranda warnings are primarily aimed may itself vitiate due process, but there is no evidence of coercion here
 
 
 [2]
 Ill.Rev.Stat.1971, ch. 122, Sec. 10-22.6 prescribes certain procedural protections to be afforded by school boards before they may discipline a student by expulsion or suspension. Before a student may be expelled for gross disobedience or misconduct (1) the student's parents must be requested to appear at a meeting of the board or a meeting with an appointed hearing officer to discuss their child's behavior, (2) the request must be made by registered or certified mail and must state the time, place and purpose of the meeting, (3) at the meeting the board or presiding hearing officer must state the reasons for dismissal and the effective date of the expulsion, and (4) where a hearing officer is appointed to preside, he must submit a written summary of the evidence adduced at the meeting to the board, whereupon the board may take appropriate action. The board may by regulation authorize a district superintendent or school principal to suspend a student guilty of gross disobedience or misconduct for a period not to exceed 10 days pending review by the school board or an appointed hearing officer, and procedural protections similar to those provided for in the case of expulsions must attend "such" suspensions
 However, the procedural prerequisites provided in this Section apply only to the Illinois school districts having a population of under 500,000 inhabitants (but not fewer than 1,000). Ill.Rev.Stat.1971, ch. 122, Sec. 10-10. Cities having a population in excess of 500,000 inhabitants are governed by Article 34 of the School Code (Ill.Rev.Stat.1971, ch. 122). The Board of Education of such a city is directed to "establish by-laws, rules and regulations, which shall have the force of ordinances, for the proper maintenance of a uniform system of discipline for * * * pupils * * * [and] may expel, suspend or otherwise discipline any pupil found guilty of gross disobedience, misconduct or other violation of the by-laws, rules and regulations." Ill.Rev.Stat.1971, Sec. 34-19. The general superintendent of schools appointed by the board "shall prescribe and control, subject to the approval of the board, * * * discipline in * * * the schools * * *." Ill.Rev.Stat.1971, Sec. 34-8. Plaintiff very plausibly argues that her transfer to Simeon was the equivalent of an expulsion, and she contends that since the defendant board has established no procedural protections comparable to those afforded by Ill.Rev.Stat.1971, ch. 122, Sec. 10-22.6, she has been denied equal protection of the laws.
 
 
 [3]
 In the motion for injunction pending appeal and supporting memorandum filed in this Court, plaintiff also did not raise the equal protection claim. Similarly, it was not alluded to in the motion for preliminary injunction nor the hearing thereon. We raised the equal protection point sua sponte in our orders of May 26 and June 6, 1972, but conclude that it should not be adjudicated here in the absence of presentation to the district court
 
 
 [4]
 Latham v. Board of Education, 31 Ill.2d 178, 185-186, 201 N.E.2d 111 (1964), held that the equal protection clause of the Fourteenth Amendment was not violated where the legislature provided for elected school boards in downstate Illinois and an appointed board in Chicago, because the intricacies of a larger metropolitan school district require an especially high degree of competence in the members of its board, and the legislature could reasonably conclude such members could be best obtained by the appointive process. That holding would not be dispositive of plaintiff's argument that disciplined Chicago students are entitled to substantially the same procedural protections as students residing in other localities of Illinois, absent valid justification for the distinction
 
 
 [5]
 According to Dravillas' testimony, during the conference on April 20th Mrs. Betts did contest the appropriateness of exclusion from Bowen and during a subsequent conversation, she pleaded for some other form of treatment for her daughter (Tr. 119, 121)
 
 
 [6]
 During the period from April 1 through April 9, 1972, there had been approximately between 15 and 20 false alarms set off on the premises of Bowen High School (Tr. 124-125, 145-146)
 
 
 [7]
 Section 6-8 of the Rules provides:
 "EXCLUSIONS OF PUPILS - CAUSE.
 "Whenever a pupil in any school is found by the school authorities to be a distinct detrimental influence to the conduct of the school, or to be unable to profit or benefit from further experience in his school, he may be transferred to special education facilities in the school system * * *."
 Section 6-9 governs the suspension of pupils and is not applicable.
 
 
 [8]
 Ill.Rev.Stat.1971, ch. 122, Sec. 34-19