826 F.2d 526
 Michael LAMB, Plaintiff-Appellant,
v.
PANHANDLE COMMUNITY UNIT SCHOOL DISTRICT NO. 2, and Joseph
R. Pope, Robert Matli, Lee Marten, Ralph Bawden, Ken Elmore,
Fred Rossi, and Roger Williams, Members of the Board of
Education Individually and in Their Official Capacity,
Defendants-Appellees.
 No. 86-2756.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 9, 1987.
Decided July 27, 1987.
 
 David M. Smith, Springfield, Ill., for plaintiff-appellant.
 Ronald W. Periard, Hershey, Bliss, Beavers & Periard, Taylorville, Ill., for defendants-appellees.
 Before CUMMINGS, FLAUM, and EASTERBROOK, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Michael Lamb appeals from the dismissal of his civil rights suit. The district court dismissed the suit, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief can be granted. Because Lamb's complaint does not state a claim under 42 U.S.C. Sec. 1983, we affirm the judgment of the district court.
 
 I.
 
 2
 The allegations contained in the complaint, which we presume to be true when reviewing the grant of a motion to dismiss, Patton v. Przybylski, 822 F.2d 697, 698 (7th Cir.1987), are straightforward. Michael Lamb was a senior in high school. At the end of the school year, on a senior class outing, Lamb admitted that he had been drinking from a cup containing whiskey (mixed with Mountain Dew). The principal suspended Lamb for the remaining three days of the school year. Consequently, Lamb missed his final exams, and was unable to graduate because he did not receive passing grades in three classes.
 
 
 3
 Robert Pennock also admitted to drinking alcohol on the school outing. Like Lamb, Pennock was suspended for three days, and was not permitted to take his final exams.
 
 
 4
 The principal, however, permitted both students to take the "Flag and Declaration of Independence" test. Under Illinois law, to graduate from high school, a student must pass this exam. See Ill.Ann.Stat. ch. 122, p 27-3 (Smith-Hurd Supp.1986).[1] Both Lamb and Pennock passed the test. Unlike Lamb, however, Pennock was able to graduate, because he passed the Flag and Declaration of Independence test and received passing grades in all of his classes.
 
 
 5
 On June 9, 1986, about two weeks after the suspension, the school board ("the board") held a hearing to consider Lamb's suspension. At the hearing, Lamb and his parents were represented by counsel, and permitted to present their case. The board rejected Lamb's appeal, and upheld his suspension. Lamb then filed a five-count complaint in district court alleging various constitutional violations surrounding the suspension proceedings.
 
 II.
 A. Count II: Suspension
 
 6
 Count II of Lamb's complaint alleges a due process violation stemming from the denial of "access to school services without a minimal oral hearing" as required by Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Complaint, count II, p 17. The Supreme Court, in Goss, set forth the notice and hearing requirement for these situations. The Court held:
 
 
 7
 [D]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story....
 
 
 8
 There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.... Since the hearing may occur almost immediately following the misconduct, it follows that as a general rule notice and hearing should precede removal of the student from school.
 
 
 9
 Id. at 581-82, 95 S.Ct. at 739-40. In his complaint, Lamb acknowledged that the principal and the board complied with the informal notice and hearing requirements contemplated by Goss. The principal and Lamb informally discussed the incident shortly after it occurred. At that time, the principal asked Lamb to admit that he had been drinking. Lamb then admitted the cup contained alcohol. Lamb therefore knew what infraction of the school's rules he was accused of committing, and the basis for the accusation. Furthermore, Lamb was given an opportunity to present his version of the facts. Thus, because Lamb was put on notice and given a hearing before he was suspended from school, the defendants complied with Goss.
 
 
 10
 Moreover, the subsequent board hearing complied with Betts v. Board of Education of the City of Chicago, 466 F.2d 629 (7th Cir.1972), in which we stated that:
 
 
 11
 [D]ue process may also contemplate affording the plaintiff an opportunity to be heard on the question of what discipline is warranted by the identified offense. Although the meting out of disciplinary punishment is a matter left largely to the discretion of the school authorities, since a penalty which is tantamount to expulsion was involved, and since that penalty was discretionary rather than prescribed, the school authorities were plainly required to give the plaintiff and her parent some opportunity to present a mitigative argument.
 
 
 12
 Id. at 633 (citation omitted); see also Brewer v. Austin Independent School District, 779 F.2d 260, 263 (5th Cir.1985) (If the student admits the conduct, then procedural errors must be related to the school's determination of an appropriate punishment.); McClain v. LaFayette County Board of Education, 673 F.2d 106, 110 (5th Cir.1982) ("The nub of the matter is that student was given an opportunity to present his side of the case, including anything by way of denial or mitigation."). In Betts, where a penalty "tantamount to expulsion" was involved, the court required that the student have an opportunity to present a mitigating argument. The requirement was met when the student's mother met with the principal, and discussed the principal's decision to transfer her daughter to another school. In this case, Lamb received an opportunity to present a mitigative argument at his hearing before the board. Compare Keough v. Tate County Board of Education, 748 F.2d 1077 (5th Cir.1984). Thus, Count II, alleging a denial of access to school services without due process, fails.
 
 
 13
 B. Count I: "Expulsion"
 
 
 14
 Count I alleges that, in effect, the principal's action was equivalent to an expulsion. Lamb argues that more process is due a student when he or she is expelled rather than suspended. Lamb categorizes his treatment as the "most severe punishment" possible, which denied him "an opportunity to graduate," and "utterly ended his educational career."[2] He argues, therefore, that because he was expelled and not suspended, he was entitled to additional process.
 
 
 15
 Lamb received the process that was due in the form of the meeting with his principal. In Keough, the Fifth Circuit relied on Goss and explicitly rejected an argument similar to Lamb's. The Keough court held that more formal procedures than a discussion between the student and principal were not required, merely because the original ten-day suspension occurred during final exams and thus had a long-term effect. Keough, 748 F.2d at 1080; see Goss, 419 U.S. at 579, 95 S.Ct. at 738-39 ("[The] timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved."). If Lamb's grades had been high enough then, like Robert Pennock, he would have graduated. Because he might have been able to graduate, the principal's action, despite the harsh effects attributable to its timing, was not an expulsion. Therefore, we conclude that, despite the long-term effects of the principal's action, it did not amount to an expulsion. Accord Keough, 748 F.2d at 1080.
 
 C. Count III: Improper Procedures
 
 16
 Count III of the complaint alleges constitutional defects in the June 9 board hearing because: the board's attorneys, the principal, and the superintendent performed dual roles in the hearing process, and neither Lamb nor his attorney were permitted to participate in the board's closed-session deliberations.[3] The board's attorney served as prosecutor in the hearing, and also advised the board during its closed-session deliberations. Moreover, the principal and superintendent, both of whom testified against Lamb, went into the board's closed-session deliberations. Lamb and his counsel, however, were excluded from those deliberations. The district court held that under these facts, no constitutional violations existed.[4]
 
 
 17
 Neither Goss nor our decision in Betts suggests that an opportunity to respond must include being present during the board's deliberations. All that is required is that the student have an opportunity to present his or her case to the board. Clearly, Lamb had this opportunity. Any other result would render meaningless closed-session deliberations.
 
 
 18
 Moreover, the combination of an advisory function with a hearing participant's prosecutorial or testimonial function does not create a per se facially unacceptable risk of bias. In Brewer, the student admitted the conduct that gave rise to his punishment. The assistant principal acted as an investigator, witness, and a voting member of the review board. The court stated that:A school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges, although the facts of an occasional case may demonstrate that a school official's involvement in an incident created a bias "such as to preclude affording the student an impartial hearing."
 
 
 19
 Brewer, 779 F.2d at 264 (quoting Sullivan v. Houston Independent School District, 475 F.2d 1071, 1077 (5th Cir.), cert. denied, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973)). Thus, in the absence of some evidence of actual bias, see Gonzales v. McEuen, 435 F.Supp. 460, 464-65 (C.D.Cal.1977), summary judgment was proper, Brewer, 779 F.2d at 264; see also Long v. Thornton Township High School District 205, 82 F.R.D. 186, 192 (N.D.Ill.1979). Although Brewer and Long were decided on motions for summary judgment, rather than motions to dismiss for failure to state a claim, we do not believe that a different rule is called for in this case. Therefore, because the roles of the parties in this situation did not create an impermissible risk that the board was biased or prejudiced, Count III fails to state a claim.
 
 D. Count IV: Equal Protection Claim
 
 20
 According to Lamb both he and Robert Pennock were similarly situated. They both committed the same infraction of the school rules and received identical treatment--suspension for three days and an opportunity to take the Flag and Declaration of Independence test. Lamb argues, however, that the school had a rule that no work could be made up during a suspension. Lamb asserts that the school made an exception to this rule by administering the Flag and Declaration of Independence test to both Pennock and himself. Moreover, Lamb states that this action only benefited Pennock, because unlike Lamb, Pennock was able to pass his classes without taking his final exams. Therefore, according to Lamb, the consequence of only Pennock being benefited by the school's action constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment. This argument is meritless. The consequences flowing from differences in grade point averages do not violate the Equal Protection Clause. Thus, Count IV fails to state a claim.
 
 III.
 
 21
 The consequence of Michael Lamb's suspension, his failure to graduate, may have been harsh, although his academic performance might have precluded his graduation in any event. We agree with the district court that "a different disposition ... might have been worked out because of the timing." Lamb, No. 86 C 3200, at 4 (C.D.Ill. Sept. 22, 1986) (memorandum and order). Nonetheless, "[i]t is not the role of the federal courts to set aside the decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." Wood v. Strickland, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). Therefore, we conclude that the district court was correct in dismissing the complaint because it failed to state a claim.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The statute provides: "No student shall receive a certificate of graduation without passing a satisfactory examination [on American patriotism and the principles of representative government as enunciated in the Declaration of Independence, United States Constitution, Illinois Constitution, and the proper use and display of the American flag]." Ill.Ann.Stat. ch. 122, p 27-3 (Smith-Hurd Supp.1986)
 
 
 [2]
 At oral argument, however, Lamb's lawyer informed the court that Lamb has not returned to school. He is presently studying for a general education diploma
 
 
 [3]
 Count III, p 18 of the complaint, provides: "The hearing finally allowed the Plaintiff was defective in that the School District allowed the district attorney who performed the role of prosecutor and the Superintendent and the Principal who had performed the roles of adverse witnesses to be present and participate in the closed deliberations of the Board despite the exclusion of the Plaintiff and his counsel in violation of the Plaintiff's right to due process...."
 
 
 [4]
 On appeal, Lamb concedes that he has no idea of what transpired at the closed-session deliberations. He does not allege any bias or prejudice on the part of the principal, superintendent, or attorneys nor does he allege that they were voting members of the board. Cf. Brewer, 779 F.2d at 264. Neither does he allege that the board itself was prejudiced or biased