In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2654

SANDRA REMER, parent of a minor son, M.R.,

Plaintiff-Appellant,

v.
BURLINGTON AREA SCHOOL DISTRICT,
LARRY ANDERSON, WILLIAM C. CAMPBELL, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 C 209--J.P. Stadtmueller, Chief Judge.

ARGUED JANUARY 24, 2002--DECIDED April 16, 2002

Before EASTERBROOK, RIPPLE and DIANE P.
WOOD, Circuit Judges.

RIPPLE, Circuit Judge.  Sandra Remer
brought this action on behalf of her son,
M.R., claiming that his expulsion from
school had violated his procedural and
substantive due process rights. The
district court granted the defendants'
motion for summary judgment and dismissed
the action. For the reasons set forth in
the following opinion, we affirm the
judgment of the district court.

I

BACKGROUND

A.  Facts

In November 1998, school and law
enforcement officials in Burlington,
Wisconsin, learned from a confidential
informant that five high school students
were planning to enter Burlington High
School with guns and shoot several
students and school officials. M.R., a
minor, was one of the students implicated
in the conspiracy. Ms. Remer is M.R.'s
mother. Three of the students were
detained and prosecuted, but M.R. and
another were not. The statements of the
conspirators indicated that M.R. had
withdrawn from the conspiracy.

Although M.R. was not criminally prosecuted, the school district suspended him. The suspension was to last until December 8, 1998. The superintendent of the Burlington Area School District notified M.R., by letter dated November 24, 1998, that the district would hold a hearing on school district property on December 1, 1998, to determine whether he should be expelled for his participation in the conspiracy. The school district also obtained a temporary restraining order (TRO) to keep M.R. from school district property "for as long as [M.R. was] suspended and for the length of any future expulsion." R.8, Ex.I, at 2. A hearing concerning the TRO was set for November 30, but, when the court was not able to hold the hearing on that date, M.R. and the school district agreed that the TRO "shall be extended and remain in force" until a hearing could be held. R.8, Ex.J. A court thereafter extended the TRO in terms identical to those of the original TRO, "for as long as [M.R. was] suspended and for the length of any future expulsion." R.8, Ex.K, at 2.

On December 1, 1998, the day of the expulsion hearing, the district's counsel faxed counsel for M.R. a message to reassure counsel for M.R. that it would be appropriate for M.R. to attend the expulsion hearing notwithstanding the TRO restricting M.R. from school district property. The message stated that the TRO would remain in force, but that "because we want the hearing to be in an appropriate and comfortable setting for all parties, including your client, we want to make it clear that we have invited your client to the hearing tonight and that it is appropriate for him to attend." R.8, Ex.L. The message also stated that it was the district's position that M.R.'s attendance would not violate the TRO because, according to the message, the TRO would expire the night of the expulsion hearing. By its terms, however, the TRO was to last for the length of M.R.'s suspension, which was to last until December 8--one week after the expulsion hearing. M.R. did not attend the hearing, which was held as scheduled on December 1.

At the school board hearing, Principal Jose Martinez, who had been informed by the police that he was an intended target of the conspiracy, recommended that M.R.

be expelled and submitted the evidence in his possession. This evidence included a copy of the delinquency petition filed by the District Attorney's office against one of M.R.'s co-conspirators and Principal Martinez's verbal summary of information that the police had shared with him after hearing from the confidential informant and obtaining the confessions of all five co-conspirators. Principal Martinez informed the school board that M.R. had withdrawn from the plan, but as the minutes of the hearing indicate "[i]t was also acknowledged that [M.R.] after backing out of the plot did not communicate with school or police officials to inform them of the planned events." R.8, Ex.N, at 2. Even though Principal Martinez had information that the District Attorney was not going to prosecute M.R., he did not so inform the school board. After deliberating, the school board voted to expel M.R. from the schools of the district from December 1, 1998, to April 26, 2003. The practicaleffect of expelling M.R. until 2003 was to preclude permanently M.R.'s education in the schools of the district.

B.  District Court Proceedings

Ms. Remer sued the Burlington Area School District and several members of the Burlington School Board, claiming that the defendants had violated M.R.'s procedural and substantive due process rights in expelling M.R. from the district's schools. The district court granted the defendants' motions for summary judgment, holding that the defendants had afforded M.R. a reasonable opportunity to be heard and that the expulsion was not unreasonable. The district court further held that, even if a due process violation had occurred, the individual defendants were entitled to qualified immunity.

II

DISCUSSION

We review de novo the district court's grant of summary judgment. See Thomas v. Pearle Vision, Inc., 251 F.3d 1132, 1136 (7th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A.  Procedural Due Process Claims

Children in Wisconsin have a right to free public education until the age of 20. See Wis. Const. Art. 10 sec. 3. Having provided for the right to education, Wisconsin "may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." Goss v. Lopez, 419 U.S. 565, 574 (1975). To comport with due process, expulsion procedures must provide the student with a meaningful opportunity to be heard. Linwood v. Bd. of Educ., 463 F.2d 763, 769-70 (7th Cir. 1972). The proceedings need not, however, "take the form of a judicial or quasi-judicial trial." Id. at 770. As long as the student is given notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard, the expulsion procedures do not offend due process requirements. Betts v. Bd. of Educ., 466 F.2d 629, 633 (7th Cir. 1972).

1.

Ms. Remer does not contest that M.R. was given notice of the charges and the time of the hearing. Rather, she submits that M.R. was not given a meaningful opportunity to be heard because the hearing was held on school district property and the TRO prevented M.R. from coming to the school. On the day of the expulsion hearing, the school district's counsel faxed counsel for M.R. a message encouraging M.R. to attend the hearing and stating that it was the District's position that M.R.'s attendance would not be in violation of the TRO because the TRO was set to expire on the night of the expulsion hearing. The TRO, however, was to last at least "as long as [M.R. was] suspended," R.8, Ex.I, at 2, and M.R.'s suspension was to last until December 8-- one week after the expulsion hearing. Despite the assurances of the district's counsel, then, the TRO was still in effect on the night of the expulsion hearing.

The district's counsel was very clear, however, that the district invited M.R. to attend and that it would be appropriate for him to do so.

Although we have entered into the Extended TRO which would prohibit your client from approaching or entering the Middle School, the District has expressly invited your client to the Middle School tonight for the express purpose of the expulsion hearing. The Extended TRO will remain in force . . . ; still, because we want the hearing to be in an appropriate and comfortable setting for all parties, including your client, we want to make it clear that we have invited your client to the hearing tonight and that it is appropriate for him to attend.

R.8, Ex.L. Notwithstanding the invitation, neither M.R., his parents nor his attorney attended the hearing.

Notably, Ms. Remer did not claim in the district court that it was the TRO that kept M.R. away from the hearing./1 Rather, she admitted that "nothing prevented M.R. or his parents or counsel from attending." R.46, at 5, para. 21; R.50, at 4 (admission)./2 Moreover, by its terms, the TRO did not apply to M.R.'s attorney and therefore did not prevent his attending the hearing and objecting to the holding of the hearing on school property. Nor is there any indication that M.R.'s attorney wrote to the school board and made such an objection or that the attorney made an application to the court that had issued the TRO to obtain permission for M.R. to attend the hearing on school property. Indeed, as far as the record indicates, it was not until January 11, 1999, six weeks after the hearing, that M.R.'s newly acquired attorney sent the school district superintendent a letter requesting a new hearing for M.R. on the ground that M.R. had not been able to attend the December 1 hearing because of the TRO. Counsel for the school board responded to the January 11 letter, stating that M.R.'s counsel had "indicated before the expulsion hearing that [M.R.] would not be attending, for reasons completely unrelated to the Extended Temporary Restraining Order." R.49, Ex.15. The school board's findings of fact, which it issued following the expulsion hearing, state that M.R. and

his parents "declined to attend the expulsion hearing because [M.R.] withdrew from school and . . . they felt that expulsion was a foregone conclusion." R.49, Ex.22, para. 2. Although M.R. has not admitted formally the truth of the school board's assertions, he has not offered any concrete evidence to negate their veracity.

Under these circumstances, we cannot say that the district court erred in granting summary judgment for the school district on this issue.

2.

Ms. Remer also submits that the expulsion hearing did not comport with the requirements of due process because Principal Martinez did not present any mitigating evidence. First, we point out that Principal Martinez did inform the Board that M.R. had withdrawn from the conspiracy. Ms. Remer states in her brief that "[i]t is not clear in this record that Principal Martinez did in fact indicate to the Board that MR withdrew from the plot." Appellant's Br. at 26. This bare assertion does not create a genuine issue of material fact because Ms. Remer has offered no evidence to support it. The minutes of the expulsion hearing and Principal Martinez' notes of his statement to the Board indicate that he told the Board of M.R.'s withdrawal from the conspiracy, and the information was also contained in the delinquency petition that the Board had in its possession.

Second, the only other mitigating factors that Ms. Remer identifies are that M.R. had no prior history of violence and that the District Attorney had decided not to prosecute M.R./3 The defendants do not contest that Principal Martinez did not inform the school board of these facts.

Ms. Remer suggests that M.R.'s absence from the hearing imposed on Principal Martinez an obligation to present the mitigating evidence on M.R.'s behalf. In support of her argument, Ms. Remer relies on Lamb v. Panhandle Community Unit School District No. 2, 826 F.2d 526 (7th Cir. 1987). Lamb, however, cannot support such a novel proposition. In that case, we simply held that, when a penalty that

is "tantamount to expulsion" is involved, the school authority must afford the student an opportunity to present evidence and argument in mitigation. Lamb, 826 F.2d at 528; Betts v. Bd. of Educ., 466 F.2d 629, 633 (7th Cir. 1972).

3.

Ms. Remer also suggests that Principal Martinez, who presented evidence to the school board, was biased because he had been a target of the plot. This court tacitly recognized in Lamb that "an occasional case may demonstrate that a school official's involvement in an incident created a bias 'such as to preclude affording the student an impartial hearing.'" Lamb, 826 F.2d at 530 (quoting Brewer v. Austin Indep. Sch. Dist., 779 F.2d 260, 264 (5th Cir. 1985)). In Lamb, however, the allegedly biased official not only presented the evidence against the student to the school board, but advised the board during its closed-session deliberations. See id. at 529. The court nevertheless determined that the record lacked a demonstration of actual bias and found no due process violation.

Dr. Martinez acted only as the prosecutor, presenting the evidence against M.R. to the school board and recommending expulsion. Due process does not require a school official acting in that capacity to be unbiased; it requires the disciplining authority to afford the student the opportunity to be heard so that the student might counteract that necessarily biased perspective.

4.

Ms. Remer also submits that the school board itself was biased as evidenced by its lack of debate over the length of the expulsion and the critical view that the board president took toward M.R.'s decision not to warn the school of the planned assault. Ms. Remer must show actual bias on the part of the school board, however. See Lamb, 826 F.2d at 530. No reasonable juror could find actual bias based on the facts she suggests.

5.

Finally, Ms. Remer submits that the

school board's denial of her request for another hearing and for reconsideration of the expulsion prevented her from presenting mitigating arguments. The school district already had afforded Ms. Remer and M.R. the opportunity to be heard. Due process did not require the school district to reconsider its decision.

B.   Substantive Due Process Claims

Ms. Remer also submits that M.R.'s expulsion denied him substantive due process. We applied substantive due process analysis to a school's disciplinary decision in Dunn v. Fairfield Community High School District No. 225, 158 F.3d 962 (7th Cir. 1998). In Dunn, we observed that "[t]he touchstone of due process . . . is 'protection of the individual against arbitrary action of government.'" Id. at 965 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)). "'[O]nly the most egregious official conduct' is arbitrary in the constitutional sense." Id. (quoting Lewis, 523 U.S. at 846). An abuse of power is arbitrary if it "shocks the conscience," but the plaintiff must show that the official conduct is "unjustifiable by any governmental interest." Id. (emphasis in original).

Ms. Remer contends that M.R.'s expulsion had no rational basis. She submits that the school board did not have enough evidence of M.R.'s culpable conduct to support his expulsion, that M.R. was not a continuing threat to students or school officials and that mere participation in a conspiracy does not warrant expulsion when the plot is not actually carried out.

There was, however, ample evidence before the school board establishing M.R.'s participation in the conspiracy. The school board heard from Principal Martinez who summarized the information provided to him by the police. The police initially learned the information from a confidential informant and later verified it with the confessions of each of the five conspirators. The school board heard that M.R.'s role in the planned assault on students and school officials included the procurement of firearms, which M.R. would steal from his father, and a getaway car, which M.R. would take from his

grandmother's garage. The school board also heard that M.R. planned to shoot one student. Moreover, the school board had in its possession the delinquency petition against one of the conspirators; the petition included information from M.R.'s own statement to the police detailing his participation in the conspiracy. M.R. had the opportunity to rebut this evidence at the hearing, but he did not do so.

Based on the evidence of M.R.'s participation in the conspiracy, the school district's interest in providing for a safe and stable learning environment free of distraction and fear certainly justified the permanent expulsion of M.R. from its schools. The school board was not required to speculate that M.R. did not pose a continuing threat to students or school officials. Nor was it required to give controlling weight to the fact that the plot was never carried out. M.R.'s expulsion, therefore, did not violate substantive due process.

## Conclusion

Because M.R.'s expulsion violated neither procedural nor substantive due process, the defendants were entitled to judgment as a matter of law. We therefore affirm the judgment of the district court.

AFFIRMED

FOOTNOTES

/1 Ms. Remer did state in her proposed findings of fact that Principal Martinez knew "that there was a civil injunction prohibiting M.R. from coming to the School District," R.50, at 17, para. 100, a fact that the defendants did not contest. This knowledge on the part of Principal Martinez does not negate the school board's December 1 invitation encouraging M.R. to attend the hearing, however, nor does it establish that the TRO prevented M.R. or his parents from attending it.

/2 Although a January 11 letter to the school district from M.R.'s counsel claims that the TRO prevented M.R. from attending the expulsion hearing, Ms. Remer did not make that claim on summary judgment. Rather, she admitted that the TRO did not prevent M.R. or herself from attending the hearing.

/3 We note in passing that Ms. Remer has not explained how the district attorney's decision not to prosecute M.R. was a mitigating or exculpatory factor rather than an exercise of prosecutorial discretion.