Rev. Donald R. GEBERT et al.

v.

Alan R. HOFFMAN et al.

Civ. A. No. 70-3471.

United States District Court,
E. D. Pennsylvania.

Jan. 13, 1972.

Michael Brodie, Pechner, Sacks, Cantor & Dorfman, Philadelphia, Pa., for plaintiffs.

Percival R. Rieder, Akington, Pa., Desmond J. McTighe and Philip D. Weiss, McTighe, Koch, Brown & Weiss, Norristown, Pa., for defendants.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs filed this class action suit on December 17, 1970. In that complaint it was alleged, generally, that on December 14 and 15 various students who attend Abington High School engaged in sit-in demonstrations during and after school hours. It was further alleged that the defendant members of the Board of School Directors responded to these sit-ins by (1) obtaining a preliminary injunction, issued ex parte on December 14 in the Court of Common Pleas of Montgomery County, restraining such behavior, (2) suspending approximately thirty-six students from school, and (3) enforcing the suspensions. Plaintiffs contended that all the above activity violated rights granted by the First, Fifth and Fourteenth Amendments of the United States Constitution and by 42 U.S.C. § 1983. Jurisdiction is founded upon 28 U.S.C. § 1343(3).

On December 18, 1970, we entered a temporary restraining order which enjoined the defendants from continuing to prosecute the state court action and from continuing the suspensions in force. An evidentiary hearing was held in this matter on February 1–3, 1971. On June 7, 1971, we vacated the restraining order insofar as it prohibited further prosecution of the state court action. At the same time we retained jurisdiction over the claims relating to student suspensions. Gebert et al. v. Hoffman et al., 328 F.Supp. 574 (E.D. Pa., 1971).

On December 15, 1970, the plaintiffs were cleared from Abington High School pursuant to a state court preliminary injunction. At this time they were also informed that they were suspended from school. Later that day, letters sent to the parents of the suspended students stated that the students had been suspended "for participating in a sit-in at South Campus, an activity disruptive to the normal operation of the school." The school principal testified that the basis for the suspensions was rule 14 of the 1970–71 Abington Handbook which provides that "[a]ny other serious breach of proper conduct" is a ground for suspension. N.T. 298–301.

In the afternoon of December 15th, Gay Jewell and Robin Mack, students at Abington High School, were arrested by a Deputy Sheriff of Abington Township while they were on school property. Testimony indicated that the sheriff made the arrest after consulting a list of students who were not allowed in school. The girls were taken to the police station, questioned, and then released. No charges were lodged against either girl.

Plaintiffs contend that their sit-in activity was protected by the First Amendment or, alternatively, if that activity was not constitutionally protected, that they were not put on notice by the school disciplinary rules that it was impermissible. It is prayed that we therefore enjoin defendants from "continuing to effectuate the school suspensions" and from "engaging in any other conduct, including state court proceedings, by which the constitutional rights of plaintiffs are abridged."

We read the complaint as asking for the following relief. Plaintiffs' request to enjoin defendants from "continuing to effectuate the school suspensions" of December 15, 1970 seeks to prevent the reinstatement of the temporary suspensions and the use of the records of the suspension. Plaintiffs' request to enjoin the defendants from engaging in any other conduct which abridges the constitutional rights of the students seeks to enjoin future temporary suspensions for sit-ins and the use of the police or resort to state court proceedings against students for engaging in constitutionally protected activities.

At the outset we can dispose of three of the plaintiffs' requests for relief. First, we find that there is no threat that the temporary suspensions of December 15 will be reinstated to bar the students from school in the future. N.T. 114–116. Therefore, insofar as plaintiffs' complaint seeks relief from

such reinstatement, we consider the issue as moot. Second, we find that the evidence is insufficient to indicate that the police arrested Gay Jewell and Robin Mack at the behest of the defendants. We find that there is no threat that the defendants will use the police in the future to enforce their will in violation of the constitutional rights of the plaintiffs, and we therefore deny the request or injunctive relief on this ground. Third, we find no threat of future state court proceedings by defendants against plaintiffs which would justify an injunction. There is no evidence that the defendants would fail to abide by any decision of this court defining plaintiffs' constitutional rights.

We are therefore left with the request to enjoin future temporary suspensions and the use of records. In order to determine whether to grant plaintiffs' request for relief, we must determine whether defendants' actions in suspending the students on December 15 was in violation of their constitutional rights.

Plaintiffs contend that the sit-in was protected activity under the First and Fourteenth Amendments, and therefore the action of the school administrators in suspending the students for such activity constituted a legally cognizable wrong under 42 U.S.C. § 1983 for which injunctive relief is appropriate. The Supreme Court has stated that:

> "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969).

■ However, even outside the school environment, the Court has held that where speech is mixed with conduct, as in the case of a sit-in, the state may reasonably regulate the time, place and manner of such activity in order to prevent serious interference with the normal usage of the facility or area in which the demonstration is to take place. Cox v. Louisiana, 379 U.S. 536, 554–557, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Cox v. Louisiana, 379 U.S. 559, 563, 85 S.Ct. 476, 13 L.Ed.2d 486(1965); Shuttlesworth v. Birmingham, 394 U.S. 147, 152–155, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Kunz v. New York, 340 U.S. 290, 293–295, 71 S.Ct. 312, 95 L.Ed. 280 (1951).

In a school case involving conduct "akin to pure speech," the Supreme Court has defined the limits of permissible regulation of First Amendment activities of students as follows:

> " * * * [A student] may express his opinions, even on controversial subjects * * *, if he does so without 'materially and substantially interfer[ing] with the requirements of appropriate discipline in the operation of the school' and without colliding with the rights of others. * * * [Burnside v. Byars, 363 F.2d 744, 749 (5 Cir. 1966).] But conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech."

Tinker, *supra*, 393 U.S. at 513, 89 S.Ct. at 740, 21 L.Ed.2d 731.

In the present case, there is evidence that the sit-in disrupted the normal operation of the school: the students involved in the sit-in did not attend classes; the sit-in forced the removal of a few classes from their scheduled locations; students engaging in the demonstration moved noisily through the halls possibly disturbing classes in session in the area; non-participating students were attracted to and congregated in the halls near the sit-in area; and school administrators could not attend to their regular duties. The issue before the court is whether these disruptions mate-

rially and substantially interfered with the requirements of appropriate discipline in the operation of the school so as to permit regulation of the conduct.

█ In deciding this issue, we believe that the courts can only consider the conduct of the demonstrators and not the reaction of the audience.

"In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."

Tinker, *supra*, 393 U.S. at 509, 89 S. Ct. at 738, 21 L.Ed.2d 731. *See also* Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

█ Therefore the fact that the demonstrations attracted a crowd which congregated in the hallways cannot be a basis for punishing the demonstrators' exercise of their First Amendment rights.

Similarly, the fact that the school administrators could not attend to their normal duties cannot be a basis for suspending the students' First Amendment rights. A sit-in is a form of demonstration in which the participants cease to engage in their normal activities and gather together to express their views on a particular issue. In the context of a high school particularly, it is likely that the school administration will want to keep close watch on such activity to insure that it does not substantially disrupt the school program. The fact that these administrators cannot therefore attend to their scheduled duties is not a basis for determining that the sit-in itself has materially disrupted the school program. If the test of material interference depends alone on what others do in response to the demonstrators' activity then all forms of constitutionally protected expression could be barred from the schools by a showing that administrators could not attend to their scheduled duties on any grounds related to

the conduct engaged in by the students. We must therefore distinguish evidence that administrators left scheduled duties in order to keep an eye on potentially disruptive conditions in the school from evidence that disruptive activity by demonstrators actually occurred.

█ Although we recognize that the students attempted to conduct their sit-in with respect for the orderly operation of the school, we find that the conduct of the sit-in participants did substantially interfere with appropriate school discipline. "Appropriate discipline in the operation of the school" certainly requires students to attend their scheduled classes and to refrain from preventing other students from attending classes in their scheduled location. School officials may act to prevent demonstrating students from disrupting classes by moving noisily through the halls. One of the "special characteristics of the school environment" is the need to maintain order and discipline to promote the educational program. We find that the actions of the students disrupted the educational program of the school and therefore that the action of the school officials in terminating the sit-in by suspending the students did not violate the First Amendment rights of the students.

We need not reach the issues raised by the plaintiffs' further argument concerning the school rules which were the basis of the student suspensions. The plaintiffs have failed to establish any reasonable probability of injury to them as a result of the continued existence and use of those rules which would justify their request for injunctive relief against future temporary suspensions or the use of the records of the December 15 suspensions. If in the future the plaintiffs can establish actual or threatened harm as a result of the application of the school disciplinary rules, we have no reason to doubt that the state courts will fairly and adequately consider the merits of the plaintiffs' claims and protect their constitutional rights.