24 F.3d 1219
 UNICOVER WORLD TRADE CORPORATION,
Plaintiff/Counter-Defendant-Appellee/Cross-Appellant,
v.
TRI-STATE MINT, INC.,
Defendant/Counter-Claimant-Appellant/Cross-Appellee.
 Nos. 93-8019, 93-8021.
 United States Court of Appeals,
Tenth Circuit.
 May 17, 1994.
 
 Mark F. Marshall of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, SD (James L. Applegate of Hirst & Applegate, Cheyenne, WY, on the briefs), for Tri-State Mint, Inc.
 Sabin Willett (Sarah B. Porter, also of Bingham, Dana & Gould, Boston, MA; and W. Perry Dray of Dray, Madison & Thomson, Cheyenne, WY, on the briefs), for Unicover World Trade Corp.
 Before WHITE, Associate Justice (Ret.),* LOGAN and EBEL, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 * This appeal and cross-appeal follow entry of judgment in a contract dispute tried to the court.[1] The judgment substantially favored Unicover World Trade Corporation (Unicover). On appeal Tri-State Mint, Inc. (Tri-State) argues that Unicover committed a material breach of contract that barred its recovery against Tri-State. Unicover argues that the district court erred when it refused to award Unicover attorney's fees.
 
 
 2
 Unicover is a direct mail marketer of numismatic and philatelic items. Tri-State custom mints legal tender and commemorative coins. Unicover contracted with the Republic of the Marshall Islands to provide legal tender coins, and then contracted with several mints in the United States to mint these coins. Among the mints with which Unicover contracted was Medallic Art Company (Medallic).
 
 
 3
 In late 1990 Medallic began experiencing financial difficulties, and shortly thereafter Tri-State acquired many of Medallic's assets. Then, in February 1991, Tri-State and Unicover entered a contract (the master agreement) under which Tri-State assumed all of Medallic's obligations under four contracts. Two of those contracts are at issue here: a contract for production of four coins, including a five dollar commemorative of the space shuttle Columbia (the $5 Columbias contract); and a contract for production of two series of coins--miscellaneous fifty dollar silver coins and a series of brass coins commemorating certain World War II aircraft (the WWII brass coins contract).
 
 
 4
 Tri-State and Unicover never developed a viable business relationship, and in an August 12, 1991, letter to Tri-State, Unicover declared material breach and terminated the master agreement. Counsel for Tri-State responded with an August 21, 1991 letter which indicated, among other things, that Tri-State wished to terminate the master agreement. Appellee's Supp.App. 84-85. Before declaring Tri-State's breach, Unicover had contracted with Sunshine Bullion Company (Sunshine) on July 31, 1991, to mint the $5 Columbias and WWII brass coins which Tri-State was to have provided in the event Tri-State did not produce them.[2] Id. at 200. Through that contract Unicover sought to avoid the expense of mailing its customers a revised delivery schedule.[3] Id. at 193.
 
 
 5
 Unicover initiated arbitration as provided in the $5 Columbias and the WWII brass coin contracts. Tri-State responded by filing suit in state court in South Dakota to enjoin the arbitration. Tri-State there asserted that because the master agreement was no longer in force the obligation to arbitrate was discharged. Unicover countered by filing suit in Wyoming federal district court seeking damages for Tri-State's alleged breach of contract, replevin of certain coining devices, and an injunction to prevent Tri-State from manufacturing unauthorized legal tender coins. Tri-State counterclaimed for a price adjustment of the two contracts. The district court made detailed findings of fact and conclusions of law, and entered judgment awarding damages to Unicover, ordering Tri-State to ship certain blank coins and coining devices to Unicover, and enjoining Tri-State from unauthorized minting.
 
 II
 
 6
 Tri-State argues that Unicover committed a material breach of contract, thus barring any recovery against Tri-State. It alleges that Unicover materially breached the master agreement when it negotiated and signed a contract with Sunshine to cover for the coins Tri-State was to have minted under the master agreement, and when it refused to allow Tri-State an opportunity to cure its nonperformance.
 
 
 7
 The record contains no indication that Tri-State presented to the district court the issue whether the negotiation and execution of a contract with Sunshine constituted a breach of the master agreement. This was not mentioned as an issue in the pretrial order or in Tri-State's proposed findings of fact and conclusions of law submitted to the district court after the close of trial. We will consider an issue that was not preserved for appeal only on a showing of manifest error. Roberts v. Madigan, 921 F.2d 1047, 1052-53 (10th Cir.1990) (quoting Gundy v. United States, 728 F.2d 484, 488 (10th Cir.1984)), cert. denied, --- U.S. ----, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992). We are not persuaded that this is such a case. See Rademacher v. Colorado Ass'n of Soil Conservation Dists. Medical Benefit Plan, 11 F.3d 1567, 1572 (10th Cir.1993).
 
 
 8
 Tri-State did argue to the district court that Unicover materially breached its agreement with Tri-State when it terminated the master agreement without giving Tri-State thirty days to cure its defaults. The contracts at issue are governed by Wyoming law, under which it is a question of fact whether substantial performance of a contract has occurred. Ferguson v. Reed, 822 P.2d 1287, 1290 (Wyo.1991). We review findings of fact for clear error. Fed.R.Civ.P. 52(a); Production Credit Ass'n v. Alamo Ranch Co., 989 F.2d 413, 419 (10th Cir.1993).
 
 
 9
 Wyoming has adopted the doctrine of substantial performance: one party's failure to perform a nonmaterial contract obligation will not excuse the other party's nonperformance of its material contract obligations. See Miles v. CEC Homes, Inc., 753 P.2d 1021, 1026 (Wyo.1988) (citing Restatement (Second) of Contracts Sec. 229 (1981)). The district court concluded as a matter of law that Unicover's breach was not material because Unicover had substantially performed its obligations under the agreement. We review de novo the district court's application of state law. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).
 
 
 10
 The record supports the district court's findings that Tri-State committed numerous contract breaches before Unicover terminated the agreement. Tri-State failed to make timely deliveries of the $5 Columbias, did not deliver the WWII brass coins, had not made required reports, and had not returned certain coining paraphernalia to Unicover. In addition, the record contains evidence that before Unicover's breach, Tri-State already wanted to be excused from its contractual obligations. It had even encouraged Unicover to procure another vendor to mint the coins Tri-State was to have produced. Appellee's Supp.App. 219.
 
 
 11
 Tri-State's complaint filed in South Dakota state court seeking to block arbitration contains an admission that Tri-State terminated the contract with Unicover, Appellant's App. 193-94, a concession that negates Tri-State's contention that it was wrongfully deprived of an opportunity to cure. See id. at 160 (Tri-State expressing willingness to repudiate the contract) and Appellee's Supp.App. 219. Under these circumstances, the district court properly viewed Unicover's failure to make a written demand that Tri-State cure its nonperformance as a nonmaterial breach of contract. Unicover's breach does not go to the essence of the agreement or violate basic standards of good faith and fair dealing. See Restatement (Second) of Contracts Sec. 241 (1981).
 
 
 12
 Further, the $5 Columbias and WWII brass coin contracts do not use mandatory language with reference to providing an opportunity to cure. The relevant portion of the termination provision at issue reads as follows:
 
 TERMINATION OF AGREEMENT
 
 13
 . . . . .
 
 
 14
 (2) In the event of MEDALLIC failing to comply with any obligation imposed on it under this Agreement, UNICOVER may request MEDALLIC in writing to remedy the failure and may, if MEDALLIC fails to comply with a request so made within 30 days after receipt of that request, terminate the Agreement forthwith by sending written notice to MEDALLIC of such termination.
 
 
 15
 Appellant's App. 132, 153 (emphasis added). This language appears to allow Unicover to decide whether to provide an opportunity to cure. These contracts also permit Unicover to promptly seek cover for merchandise that is late in delivery:
 
 DELIVERY
 
 16
 . . . . .
 
 
 17
 (2) Should MEDALLIC fail to deliver properly ordered Coins within two (2) weeks of the agreed to schedule, UNICOVER has the right to have said order minted at another mint.
 
 
 18
 Appellant's App. 127, 147. Read together these provisions provide Unicover with alternatives in the event of missed deliveries--which are reasonable in light of the time-sensitive nature of Unicover's business.
 
 III
 
 19
 Unicover appeals the district court's failure to award it attorney's fees it alleged the contracts required. The district court determined that the contracts provided indemnification for expenses, including attorney's fees, only if the parties arbitrated contract disputes. We review de novo the district court's legal analysis concerning the availability of attorney's fees. American Ins. Co. v. El Paso Pipe and Supply Co., 978 F.2d 1185, 1192 (10th Cir.1992).
 
 
 20
 The contract language that Unicover argues supports its request for attorney's fees reads as follows:ARBITRATION
 
 
 21
 22. Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association. The judgment upon the award rendered by the arbitrators may be sought in any court of competent jurisdiction. The prevailing Party shall, if the arbitrator so determines as part of the award, be indemnified by the other Party for all costs and expenses relating to such claim or controversy, or the arbitration proceedings relating thereto, including attorneys' fees and expenses.
 
 
 22
 Appellant's App. 135, 155. The language clearly contemplates that contract disputes "shall be" addressed in an arbitration proceeding. Only the prevailing party in an arbitration setting may seek attorney's fees; and, then, the arbitrator must determine entitlement.
 
 
 23
 The parties chose an economical forum and agreed that the prevailing party could possibly recover attorney's fees. However, both parties abandoned that forum by pursuing civil litigation. We will not assume, without supporting contract language, that the parties intended to have the attorney's fees of the prevailing party be an additional stake in their lawsuit, particularly when attorney's fees in civil litigation are generally higher than attorney's fees for arbitration. When a contract is silent as to attorney's fees in the event of litigation the American Rule applies--each party bears the cost of their own counsel. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); UNC Teton Exploration Drilling, Inc. v. Peyton, 774 P.2d 584, 594 (Wyo.1989)
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. Sec. 294(a)
 
 
 [1]
 We grant Unicover's unopposed motion to file a surreply brief
 
 
 [2]
 The Sunshine contract provided: "Nothing in this Agreement shall preclude UNICOVER or THE REPUBLIC from having Coins produced at another Mint." Appellee's Supp.App. at 32
 
 
 [3]
 Unicover must conform with specific mail order merchandise regulations which impose timetables for shipping merchandise purchased by mail, require notification to purchasers of delays, and offers of refunds. 16 C.F.R. Sec. 435.1