FILED
United States Court of Appeals
Tenth Circuit

January 13, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ROBERT M. BROWN,

      Plaintiff - Appellant,

v.

UNIVERSITY OF KANSAS;
STEPHEN W. MAZZA, individually
and in his official capacity as
Interim Dean of the University of
Kansas School of Law; JOYCE A.
MCCRAY-PEARSON; GAIL B.
AGRAWAL; WENDY ROHLEDER-
SOOK; ANDY TOMPKINS, in his
official capacity as President of the
Kansas Board of Regents; GARY
SHERRER, in his official capacity
as Chair of the Kansas Board of
Regents; ED MCKECHNIE, in his
official capacity as Vice Chair of
the Kansas Board of Regents;
JAROLD BOETTCHER, in his
official capacity as a member of the
Kansas Board of Regents;
CHRISTINE DOWNEY-SCHMIDT,
in her official capacity as a member
of the Kansas Board of Regents;
MILDRED EDWARDSIN, in her
official capacity as a member of the
Kansas Board of Regents; TIM
EMERT, Chairman, in his official
capacity as a member of the Kansas
Board of Regents; RICHARD
HEDGES, in his official capacity as
a member of the Kansas Board of
Regents; DAN LYKINS, in his
official capacity as a member of the
Kansas Board of Regents; JANIE

No. 14-3102
(D.C. No. 2:10-CV-02606-EFM)
(D. Kan.)

PERKINS, in her official capacity as a member of the Kansas Board of Regents; BERNADETTE GRAY-LITTLE, in her official capacity as Chancellor of the University of Kansas,

Defendants - Appellees.

## ORDER AND JUDGMENT[*]

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

Mr. Robert M. Brown was enrolled as a student at the University of Kansas School of Law until school officials learned of his criminal history. When they discovered this history, they expelled Mr. Brown from the school. He reacted by suing the school, some faculty members, and all of the state regents, alleging state torts and denial of due process. The district court granted summary judgment to the defendants, and we affirm.

---

[*]    The Court has determined that oral argument would not materially help in deciding the appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Thus, we have declined to order oral argument.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

## I. Mr. Brown's Criminal History and Expulsion

When Mr. Brown applied for law school, his application contained a section entitled "Character & Fitness." In this section, applicants were to disclose any criminal history:

> Have you ever been arrested for, charged with, or convicted of a felony, misdemeanor or infraction other than a traffic violation? (include diversions, sealed or expunged records, and juvenile offenses)
>
> Have you ever been arrested for, charged with, or convicted of a traffic violation involving alcohol or a controlled substance? (include diversions, sealed or expunged records, and juvenile offenses)
>
> If you answered "yes" to any of these questions, please explain on a separate sheet or electronic attachment submitted with your application and provide the date, nature of the offense or proceeding, name and location of the court or tribunal, and disposition of the matter.

Appellees' App., vol. I at 224. Mr. Brown answered "no" to these questions.

He then certified the truth of his answers, acknowledging that a false answer constituted "sufficient cause for denial of [the] application or dismissal from the School of Law." *Id.* at 224-25, 227.

With certification of the answers, the law school accepted Mr. Brown and he began classes.

Mr. Brown then amended his application to disclose criminal convictions for domestic battery and driving under the influence. The law

- 3 -

school's admissions committee investigated and determined that Mr. Brown's application would have been rejected if his criminal history had been known. With this determination, an associate dean filed an academic misconduct complaint. Mr. Brown objected, and a hearing panel dismissed the complaint on the ground that it did not allege violation of a particular rule. Nonetheless, the panel observed that Mr. Brown's application and certification letter acknowledged that he could be expelled for falsifying, misrepresenting, or failing to supply required information.

The law school's dean, Ms. Gail Agrawal, sent Mr. Brown a letter, stating her intent to dismiss him for "falsification, misrepresentation, and failure to supply complete, accurate and truthful answers to [his] application for admission to the School of Law." *Id.* at 211. She detailed the facts warranting dismissal and stated: "If you believe that this action is inappropriate or that there are mitigating factors that I should consider before dismissing you, then you must provide me with a written response to this letter by 2:00 p.m. on June 3, 2010." *Id.* Mr. Brown challenged the dismissal, demanding a hearing and notice of the charges and requesting a hearing with the University Judicial Board and a personal meeting with Dean Agrawal. Dean Agrawal declined a meeting and the Judicial Board's chairperson declined to provide a hearing, stating that faculty rules authorized each college to establish its own admission standards. The

Dean then notified Mr. Brown that he was dismissed from the law school "based on falsification, misrepresentation and failure to supply the required information to support [his] admission to the School of Law." *Id.* at 144-45.

Mr. Brown sued, and the district court granted summary judgment to the defendants, ruling that the members of the Board of Regents had no personal involvement in Mr. Brown's dismissal, and that the defendants provided due process.[1]

## II. Standard of Review

We engage in de novo review of the award of summary judgment, applying the standard under Fed. R. Civ. P. 56(a). *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). In applying this standard, we view the facts in the light most favorable to Mr. Brown, resolving all factual disputes and reasonable inferences in his favor. *Id.* Because Mr. Brown is proceeding pro se, we afford his materials a liberal construction, but do not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

---

[1]    The district court also held that the state-law claims failed as a matter of law.

### III.  Application of the Standard of Review

Applying this standard, we conclude that the award of summary judgment was proper.

### A.  Members of the Board of Regents

Members of the Board of Regents were entitled to summary judgment.

As the district court recognized, "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (brackets and internal quotation marks omitted). Mr. Brown testified that his claim against the regents was based purely on their oversight function.  Appellees' App., vol. I at 172.  Based on this testimony, Mr. Brown conceded that he had no evidence that the regents knew about his application or expulsion.  *Id*. at 175-76.  Under these circumstances, the members of the Board of Regents were entitled to summary judgment.

### B.  The Due Process Arguments

We also reject Mr. Brown's due process arguments.

"The Fourteenth Amendment provides that a state shall not 'deprive any person of life, liberty, or property, without due process of law.'" *Lauck v. Campbell Cnty.*, 627 F.3d 805, 811 (10th Cir. 2010) (quoting U.S.

Const. amend. XIV, § 1). Under this amendment, we address two questions. The first is whether a liberty or property interest exists. The second is whether the State provided sufficient procedures. *Id.* In this case, we will assume Mr. Brown had liberty or property interests implicated by his dismissal from the law school. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84-85 (1978) (assuming without deciding the existence of a liberty or property interest); *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000) (same).

The question then becomes the adequacy of the procedures. The district court properly required greater procedural safeguards because the university was considering an action that was disciplinary rather than academic. *See Harris v. Blake*, 798 F.2d 419, 423 (10th Cir. 1986). The procedures satisfied the stringent requirements for disciplinary action.

When a university considers expulsion, it must use procedures accounting for the conflicting interests. *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). To consider those interests, we weigh "(1) the private interest that will be affected by the official action, (2) the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and administrative burden, that the additional or substitute procedural requirements would entail." *Id.* The objective is to ensure balancing of

- 7 -

"[t]he students' interest in unfair or mistaken exclusion from the educational process" and "the school's interest in discipline and order." *Id.* (internal quotation marks omitted).

The risk of unfair expulsion is minimal because Mr. Brown knew what he had done, knew it constituted ground for expulsion, and took various opportunities to urge mitigation.

Mr. Brown argues that the procedures should have had greater formality, citing *Goss v. Lopez*, 419 U.S. 565 (1975). But *Goss* simply noted that severe disciplinary action could require "more formal procedures," not necessarily the equivalent of a trial. *Goss*, 419 U.S. at 584. For our purposes, the issue is whether greater protections would have proved beneficial. Any benefits would have been minimal in light of the undisputed facts.

These facts include Mr. Brown's acknowledgement that he could be expelled for falsifying his application and his notification to the school that he had given false information. The dean relied on this fact, but gave Mr. Brown an opportunity to respond.

Mr. Brown did so, raising procedural objections and requesting a hearing, but failed to address the fact that he had knowingly provided false information. Accordingly, Dean Agrawal ordered expulsion.

In light of these undisputed facts, further procedural safeguards would have added little. *See Watson*, 242 F.3d at 1241 ("All that is necessary to satisfy due process is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." (internal quotation marks omitted)).

Elsewhere, Mr. Brown contends that Dean Agrawal was biased. But, there is no evidence of a link between the dean's alleged bias and the decision to expel Mr. Brown. The connection is particularly attenuated because a separate body (the admissions committee) concluded that the school would not have allowed admission into the school if the criminal history had been disclosed.

Mr. Brown also relies on the university's failure to follow its own rules and regulations. The district court rejected this argument, holding that the university's "failure to follow its own regulations does not, by itself, give rise to a constitutional violation." Appellees' App., vol. IV at 579 (citing *Horowitz*, 435 U.S. at 92 n.8; *Trotter*, 219 F.3d at 1185; *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986) (per curiam)). Mr. Brown argues that the district court erroneously relied on cases involving academic dismissals rather than disciplinary actions. But, even in the disciplinary context, a school's failure to comply with its own rules

"does not, in itself, constitute a violation of the Fourteenth Amendment." *Hill v. Trs. of Ind. Univ.*, 537 F.2d 248, 252 (7th Cir. 1976). Indeed, "[t]he Due Process Clause . . . does not require the University to follow any specific set of detailed procedures as long as the procedures the University actually follows are basically fair ones . . . ." *Newman v. Burgin*, 930 F.2d 955, 960 (1st Cir. 1991). The procedures afforded to Mr. Brown were fair as a matter of law.

## C. Mr. Brown's Proffered Factual Disputes

Mr. Brown asserts the district court erred in resolving alleged factual disputes. He first says it was "clear error" for the district court to limit its decision to undisputed facts. Appellant's Br. at 54. This argument is meritless because summary judgment is appropriate only if "'there is *no* genuine dispute as to any material fact.'" *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014) (citing Fed. R. Civ. P. 56(a)) (emphasis added). Of course, the defendants "must identify portions of the record that demonstrate the absence of a genuine issue of material fact," and Mr. Brown was entitled to have the evidence viewed in the light most favorable to him. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

Mr. Brown cites 321 factual statements, saying they show material disputes disregarded by the district court. For example, he says that a

- 10 -

factual dispute existed regarding his reasons for not disclosing the criminal cases. But, Mr. Brown's motivation is irrelevant. The key consideration is whether Mr. Brown disputes that he knowingly gave false answers in his application. He does not dispute that fact.

In a related argument, Mr. Brown contends that despite evidence showing material disputes, the district court erred in making the following dispositive factual findings:

- that he lied on his law school application;

- that the defendants' conduct was not "wanton" for purposes of his state-law negligence claim;

- that he had no reasonable expectation of practicing law and could not show intentional misconduct or malice to support his state-law tortious interference claim; and

- that there was no evidence of unlawful overt acts or meeting of the minds to support his state-law civil conspiracy claim.

The first finding involves an uncontested fact, for Mr. Brown does not deny that he intentionally gave false information about his criminal history.

We need not address the other three findings, because Mr. Brown does not challenge the district court's grant of summary judgment on his state-law claims. Indeed, the state-law claims are not listed in Mr. Brown's statement of the issues in his opening brief. *See* Aplt. Br. at 3-4. And apart from an isolated reference in his statement of the case, his

opening brief refers to the state-law claims only in the context of this factual discussion.  These scattered references are insufficient to preserve appellate review.  *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).

## IV.   Sealed Record Volume

We also have an issue involving the sealing of Volume V of the defendants' appendix.  The clerk's office directed the parties to file written responses stating whether Volume V should remain under seal and, if so, for how long.  We have held:

> A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records.  To do so, the parties must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process.

*Eugene S. v. Horizon Blue Cross & Blue Shield of New Jersey*, 663 F.3d 1124, 1135-36 (10th Cir. 2011) (citations and internal quotation marks omitted).

The defendants have requested that Volume V remain under seal because it contains redacted information obtained through discovery of other students who amended their law school applications to disclose criminal or disciplinary records.  The defendants claim these students have a strong interest in preventing the disclosure of their personally identifiable information.  *See generally* Family Educational Rights and

Privacy Act, 20 U.S.C. § 1232g(b)(1).  We agree and conclude that the defendants have shown a substantial interest justifying the continued sealing of Volume V.  Accordingly, Volume V shall remain under seal.

## V.     Disposition

We affirm and direct the Clerk to continue sealing Volume V of the defendants' appendix.

Entered for the Court


Robert E. Bacharach
Circuit Judge